May it please the Court, I'm Clifford Sloan for Appellants Christie's and Christie, Manson & Woods, or CMW. Thank you. Four central facts in this case and on this appeal are undisputed. First, the appellee, Mr. Halsey Minor, made winning bids on six paintings for a total of $12.2 million at auctions in May of 2008 and July of 2008. Second, Mr. Minor never paid a penny on those bids. Third, in submitting those bids, Mr. Minor entered into binding conditions of sale, binding contracts, which specified that the submission of a bid created a mandatory payment obligation and which also provided explicit remedies in the event of nonpayment. And fourth, when Mr. Minor failed to pay his debt, Christie's temporarily retained seven other pieces of art, the Prince Artworks, as collateral pending Mr. Minor's payment of his debt.  All right. Do you have any authority whatsoever for the proposition that Christie's possessed the property that was being held by a sibling corporation?  Yes, Your Honor. What is that case? Okay. And I think it's both a legal question. If I'm visiting, that would really help me. Okay. Give me the citation. Yes, Your Honor. I think it's both a legal question and a factual question. But the legal question of the question is your authority and the citation. Yes, Your Honor. So Fariba v. Dealer Services Corporation, which is a California appellate court decision which is cited in our opening brief, and it, in interpreting the UCC, addresses the question of possession. And it – and the argument that one party was making was that you have to have physical possession. And the Court rejected that proposition and said instead that what you need to have is actual custody and control. Well, but I'm asking you about a sibling corporation. As I understand the situation, Christie's, the corporation, did not possess the Prince paintings. Well. Somebody else did. I would disagree with that, Your Honor. Well, I'm not. I'm a lawyer. I understand. I'm not an adversary. You just helped me through this. No, no. Who actually held the Prince paintings? See, this is a very – physically until – Maybe there's a pattern here in the Ninth Circuit that you don't answer questions, but who held the Prince paintings? I'm trying to answer the question – Wasn't it some operation in London? Physically. Yes. Physically. Physically possessed. Physically, the paintings were at the corporate sibling, Honcha-Venison, or HOV, until September 2, 2008. Physically, they were at Christie's from September 2, 2008 until early November 2008. And at the time that the agreement that you referred to, I think in your point three, was signed, where were the paintings? They were at the corporate sibling in London, at HOV. So the legal question then becomes, at the time of signing this quasi-security agreement, did Christie's possess the Prince paintings by virtue of their being physically possessed by a sibling corporation, HOV? Yes, Your Honor, that's the question for May of 2008. There's a whole separate issue about September 2008, when Christie's unquestionably had possession. Oh, sure. And we would argue that – Sure. But what's your best authority for the proposition that the transfer of physical possession by HOV after the agreement was signed, the quasi-security agreement was signed, had any effect whatsoever on the legal relationship as between the plaintiff in this case and between Christie's and the owner? Well, so, Your Honors, I understand the question. It's what's the authority for the idea that when it came into Christie's physical possession in September 2008. Okay. So a security agreement that purported to grant a security interest in property that Christie's possessed as of the date this agreement was signed somehow magically attaches this post-acquisition transfer? Well, Your Honor, the security agreement. Post-signature transfer. The security agreement, and this is paragraph 4F9 of the agreement, doesn't say as of this date. It says any property in our possession of the buyer. It doesn't say. All right. You're the drafter of this. Okay. The drafter of the security agreement. Wasn't Christie's in the best position to define the term possession, to encompass possession by a sibling company? I mean, is there any reason why the term possession in the agreement should be, have a broader meaning than actual possession? You're the drafter of it. Well, Your Honor, as I indicated in the Fariba opinion, the California appellate court said that it's actual custody or control. And there were very powerful facts here. Well, how does that help you? That doesn't help you. No, no. Okay. Christie's does not come out looking good on the facts here. Well, Your Honor, can I? I mean, if I look at, I looked at your case that you've cited. I looked at in rave Robert Fagedian's sons. Possession means actual possession, not constructed possession, not effective possession, actual possession. And I have you writing a conditions of sale security agreement that says any possession, any property in our possession owned by the buyer. I can't find on May 21st there was any property. If you wanted to draft such an agreement, which my good colleague, why didn't you draft it in there? Otherwise, I'm going to construe that agreement against you because you drafted it. Well, Your Honor, I'd like to make two points on it. One is related to May of 2008. But I also want to get to the very important point that Christie's unquestionably had possession in September 2008. Right. But does the security agreement reasonably identify after acquired property as collateral in its terms? Well, yes, Your Honor. For example, the Colortran decision from bankruptcy appellate panel of this Court. But does the agreement identify after acquired? Let's assume that it was because if you assume the possession came when you got it in, what, New York or whatever, but that's after acquired, right? It's after the time of the agreement in May of 2008, Your Honor. Right. But similarly, in the Colortran decision, it's the same thing. It says any property of yours in our possession is a shipper. There's a shipment 15 months later. The property is in their possession. There's no rule under the California Commercial Code or the UCC that it has to only be property that's in the possession. All right. So if you're to prevail, we have to define possession to give it a broader meaning than actual possession. We have to give it a meaning that it applies to a sibling company, and we also have to write into the agreement that it's after acquired property. With respect, Your Honor, I don't think that those are necessary for us to prevail. And here's why. Well, why don't I have to make all those leaps? Here's why, Your Honor. There's a fundamental problem in the instructions, which is that the district court refused to instruct the jury on one applicable provision of the enforceability of a security agreement. So none of these questions could go to the jury. And the district court simply did not instruct the jury on one of two applicable provisions. So all these facts that Your Honor is talking about could be taken into account if the jury had been given proper instructions. And under 9203b3a, the question is simply was there an authenticated security agreement that provided a reasonable description of the collateral. And with regard to May 2008, and I don't want to lose sight of September 2008. I want to get back to that. But with regard to May of 2008, there were powerful facts in the evidence, powerful facts in the record, supporting Christie's view that it had possession beginning in May 2008. But the jury wasn't allowed to consider that because of the district court's failure to give the instruction. Well, that is what I thought was going to be your argument, is I thought your argument was going to be on May 2008, Christie's possessed these. That is my argument. Because they were held by a sibling corporation. Well. And that we, for purposes of our analysis, that we should not make a distinction between the parent and the sibling. That's what I thought your argument was going to be. And so I sent a law clerk out on a mission, find me a case that says that the possession by a sibling corporation is tantamount to possession by the parent corporation. We found one old case, I'll share the citation and name with you, that didn't cut in your favor. But I could find no other case. And you cited no case. And in fairness, your adversaries didn't either. So that's why I asked the question that I did. Give me a case that says that possession by HOV was tantamount to possession by Christie. Your Honor, and I think the reason is actually because rather than a question of corporate form, it turns on the facts. And as the Fariba decision says, it turns on whether there's custody and control. If I have something. I don't see how that helps you, because you didn't have custody or control. Well, I'd like to explain the evidence that's in the record that does support our view that we had custody and control. Okay. First of all, and there was testimony both from Mr. Minor and from witnesses for Christie's. And I'd like to go through those. First, from Mr. Minor, three examples. First of all, according to the testimony, it's absolutely clear that 100 percent of Mr. Minor's contacts about the Prince Artworks were with Christie's. Zero percent were with HOV. Secondly, Mr. Minor himself testified, and this is at page 86 of the supplemental excerpts of record, Christie's takes my art for six months. His own testimony was not HOV takes my art for four months and then Christie's takes it. Why do I have to look at the testimony of what somebody says? Why can't I look at what the documents are? It seems to me that documents are important in security transactions. I was a bankruptcy creditor lawyer long enough to know the bankruptcy trustee used all these documents that had been performed by my clients as blackmail over me to give him a little bit of security to get it over to the bankrupt estate so that they could have their stuff because I didn't draft my documents right. And there was no sense of me trying to put in all kinds of evidence about who said this and who said that if the documents were clear and unambiguous. And in this case, they're clear and unambiguous. There's no reason to look at this other testimony. Give me a good case that says I should look at testimony outside the record when I've got clear and unambiguous documents, written documents in front of me. Well, Your Honor, a couple points on that. First of all, the district court did not rule here that the conditions of sale were clear and unambiguous, and, jury, let me instruct you as a matter of law on the conditions of sale. I understand that. So that's a good point because I want to ask you about that. Okay. But go ahead. And so he said a number of times, consider all the facts and circumstances, consider the course of dealing between the parties, but then he did not give an instruction on the applicable provision of law, as I was saying, which would give the jury a proper legal framework. Let me ask you a question. What is my standard of review as it relates to his jury instruction? Well, on a question of law, it's de novo. Well, a question of law. This is a jury instruction. I got all kinds of things. This Court reviews a district court's formulations of jury instruction in a civil action for abuse of discretion. And, Your Honor, what that refers to is the wording of the instruction. But you haven't cited a case that says that the sibling company possession is tantamount to the parent company. So how was the judge wrong on a point of law there? If you can't give us a case here and you didn't give a case to the district court, how was the district court wrong on the law, and then you get to the abuse of discretion standard? Okay. Let me explain how the district court was wrong on the law. There's a directly applicable provision of law, 9203b3a. The only reason that the district court gave for not instructing on that as a legal matter was it relied on the Berluschi decision, California appellate court decision. And far from supporting the district court's decision as a matter of law, it undermines it, because the Berluschi decision rested on the fact that there was not a written security agreement. And, in fact, it distinguished the previous California appellate court decision, the Clark decision, because in Clark there was a written security agreement. Here there was a written security agreement. That was the legal basis for the district court, for the district court's decision not to instruct on this directly applicable provision of law. And it was erroneous as a matter of law, Your Honor. Well, now, I've just, if my colleagues have questions, you're into what you wanted to say for your rebuttal time, so. Okay. Well, if I could just very briefly, I do want to make the point about September 2008, because. All right. That's your time. Okay. I understand, Your Honor. Thank you. Because Christie's unquestionably had physical possession from September 2008 through early November 2008. And the jury, as part of the instruction on the legal framework, should have understood the rights of a secured creditor at that time, Your Honor. Thank you. Okay. You have four minutes for rebuttal then. Thank you. Good morning, Your Honor. Good morning. My name is Ian Nassiter. I represent the appellant, appellee, excuse me. You don't want to make that mistake. No, I really don't. And I've been rehearsing, so. This case was tried by Judge Alsop, or before Judge Alsop, and the case in a nutshell that the jury heard was that Mr. Minor owed Christie's about 5.2 million on August 21st, 90 days after the purchase, because that's what the parties had agreed upon. Well, now, you're not disputing that he bid on things, he won the bids, and in fact, the jury verdict does reflect that he owes Christie's some money for their lost commissions, essentially. Right. He had to pay 1.5 million plus. So you're not we don't need to talk about that those were legitimate. He won those bids. He won those bids, and when he needed his artworks to liquidate them, his most valuable possession, to liquidate them, to satisfy those debts, they were taken by Christie's under a pretense. And the amount of money, the value of the Prince Collection at that time was anywhere between the 17 million he turned down in May and 25 million, as his expert testified. And his debts at the time they took it were 5.2 million, and later, if you add in the money he was supposed to pay in October, would have gone to 12 million. So Christie's way oversecured themselves. But I think this case, the jury instructions can be decided on a single issue, which you've identified, which is was there a security interest here. Well, and it seems to me that that would help us if you would give us authority. So let me ask you the correlative question. Do you have any authority for the proposition that the property that was held by a sibling corporation was not in the actual or constructive possession of Christie's? I don't have authority. As an example of a case, I have an explanation for why I don't have authority. Because it occurred to me after reading the reply brief, this is really akin to piercing the corporate veil. What HOV and Christie's are trying to do to themselves is say they are the same entity, when they have held themselves out as separate legal entities. And remember the fact that you, under the facts of this case, I think, well knew the relationship, you well knew the fact that the corporations were under the same parent, because you actually weren't even dealing with HOV, you were dealing with Christie's employees. And they were totally facilitating your requests. Undoubtedly. By utilizing a sibling corporation. Undoubtedly. That they injected themselves in there when they saw an opportunity for their sibling corporation to have an opportunity itself to sell this artwork for its own benefit. And what happened here is, this is very important, that there was a consignment agreement issued by HOV on May, when the objects were sent on May 7th. Okay. Who was a party to the consignment agreement? HOV and Minor. And that's what the court gave an instruction in EOR 9 that the only agreement was, the only party to the parties to that agreement was Minor and HOV, and that Christie's was not a party, and Christie's did not object to that instruction. I say that because it's true. It's inarguably true. You look at the document. That's the only person who signed it. And what I was referring to in piercing the corporate veil was, the Ninth Circuit doesn't allow one's own parties to pierce the corporate rail. You issued a decision years ago in the Fate case v. CIRS that acknowledged the general position is third parties can pierce the corporate veil, but corporations can't do it to themselves. And the reason that the ---- I don't know that they preclude it. I've never ---- I haven't found a case that permitted it. The case is ---- Let me give you a couple of hypotheticals. Sure. Let's say that Judge Smith is a corporation, and that he says ---- prepares one of these  I grant him a security interest in all property in his possession on a given date. And it turns out that the property that is at issue happened to be a car that I took to Smith Corporation for repair. He sent it over to a garage in South San Francisco, a totally unrelated party, and that's where the car was. It really wasn't in my possession or his possession physically. And does the settlement ---- does the agreement ---- The security agreement in this case protect Judge Smith by attaching a security interest in a car that is not physically in his possession, but is over in someplace else by an independent third party. If it doesn't specify in some manner or nature, as required under 910A, the category of the item, I would say no. All of the cases ---- Well, doesn't he have constructive possession of the car? I took it to him. He received it. He just happened to take it over to somebody else to have some work done on it. What difference does it make? I think the difference is in the language in the ---- that describes the security agreement. In most of the cases that were cited by the appellant, they're all car cases with installment loan situations. The Colortran case, which both parties rely on to some degree, is a case that most importantly has possession, custody or control as its language. Okay? Maybe this case would turn differently if Christie's had possession, custody and control. That might address your sibling issue. But they didn't have that language in here. Well, if Christie's had it first and then sent it to HOV, would that be a different situation? Potentially, yes. But that's not what happened. Okay. So what you have to explain is after the other thing about the Colortran cases, and this is important, is that was a situation where the party set up a credit agreement, and then the shipper started shipping and the ---- so it was contemplated at the time that there would be future acquired property that would be the subject of the security. And that's what happens with receivables. And if you ---- there is actually a provision, 9204, the provision that follows this. It addresses after acquired property. And you can put in a security agreement, it covers after acquired property. And generally, equipment, art, physical stuff is stuff you've got to say after acquired property, because no one knows, and the whole purpose of the UCC is to have clarity, understanding, and little cost in your commercial transactions. So you want clarity. This in your possession is not clarity. And so there's no way any reasonable inquirer, which is a standard, could understand whether the prints work at HOV is in their possession. Well, what legal determinations did the judge have to make here before deciding which jury instructions to give? Well, I think in terms of ---- if we're talking about the ---- in terms of the sibling and the possession by HOV ---- Well, honestly, the judge kind of honed this down. I mean, there were facts in this case that in terms of ---- that seemed to indicate that ---- I mean, did the judge just maybe act a little like a juror here in the sense that made the determination that because there were negative facts against Christie that would seem to indicate that Christie was ---- there were e-mails that indicated that they were playing both ends against the middle and that your client thought that he was being represented in the sale of his artworks and there were some indications that would seem to indicate that maybe they then told the prospective buyer that your client had pending ---- you know, he'd made some ---- you know, he needed to sell this and he'd made some ---- he had some ---- to get his property for less than the $25 million. There was a lot of that going on. So did essentially the judge just decide, okay, you know, that, you know, Christie just decided to do a snag of this property as they got it coming back in and so I'm just going to tell the jury that these are the two people that signed the consignment and I'm not going to give any other type of instructions allowing the jury to go astray from that. I don't know what was in Judge Olsop's head, but on a cold record I can tell you that he did the right thing in looking as a matter of law at the contract and saying I don't need to go outside of this. In fact, if he'd given it to the jury to decide, he might have created even more problems because the reality is the law with the confusing nature of those facts, irrelevant facts, because what Mr. Minor thought about whether Christie's was acting as a go-between or the agent with HOV, the bottom line was he had an agreement with HOV that said, you promised to give me back my stuff. So if I understand your position, you're saying that the judge looked at the security agreement, made a legal interpretation of that which was correct, and then based on that gave instructions and did not give instructions on things of he said, she said and all of that. Correct, because it was irrelevant once he made the legal determination that the documents were clear on the face of the corporate entity. So do you agree that that's a de novo review, though? Well, I think on the issues of law it is a de novo review. I think when you start to look at specifically mixed fact and law questions, which is was there enough information here to, did Christie's carry its burden, if you like, of demonstrating that the security agreement encompassed after-acquired property that was not in its possession but was in its control, stuff like that, that to me is not an abuse of discretion standard. So that's a little different than you argued to us in your brief? I thought I covered both, but I will take the Court's. Well, the only reason I took up that question with counsel was I was trying to give him the chance to respond to your idea that this was an abuse of discretion. I think I've explained my position. I hope I haven't. If the Court has any other questions on that. So let me ask you, then I do have one other question. It's my understanding that what counsel is really suggesting is that this first jury instruction does not give us what the law in California is, that the jury instruction 25 does not state the whole law of California, that instead California 9203B3A and B would not be exactly as that jury instruction has suggested. Well, I think the instruction was given on B only, not A. I understand. But what he's suggesting is, why didn't A be given? Because the legal requirements to get to A weren't available to the ---- Christie's hadn't carried its burden of showing that in the security language in our possession was adequate to cover art that was not in their possession, but was in the possession of another party. Did it adequately describe the collateral? No, I don't think it did. That's precisely the point. I think in your possession, it doesn't describe collateral like equipment. Well, it says property in our possession. I thought your argument was that it did not adequately describe the collateral in possession. It doesn't adequately describe the collateral in their possession. It's a twofold analysis. The first part is the pre ---- is the HOV possession analysis. HOV ---- I understand that. I understand your possession analysis. The post HOV then is what we're getting to, is whether when they had physical possession, was it pursuant to A. And the judge correctly determined that you can't have a security agreement that is invalid as respecting the print's artwork, which is not in their possession, and bootstrap that into a valid one because you suddenly get possession by virtue of that security agreement. That's the Berleski case. And that's why what Judge Alsop did was absolutely correct. And that's why he gave the collateral understanding instruction, anticipating that the parties can change the situation by mutual agreement. I suggest that Judge Alsop had a very clear idea of where he was going and gave his instructions very deliberately, not to try and get the jury to do anything other than to rely on the facts that were admissible in this case. Did the security agreement, if you'll remind me, contain the traditional possession, custody or control language? No, it did not. That's a very important point. The Colortran case on which they rely on did have that language. Many other cases have similar language, have after-acquired property language. This is just flat possession. And as you pointed out, Judge Callahan, it's their agreement. They can do what they want to it. If the panel has no other questions. Thank you. Your Honors, I would like to make three points. The first point is that Mr. Nassiter has emphasized, and the last colloquy is that the jury has to be focused on custody and control and whether those words were there. And I think a very important point is that under California law, the law of secured creditors, the set forth in the Fariba decision, possession is defined by custody and control. And Mr. Nassiter was saying, well, if it said custody and control, that would be totally different. But we have a very authoritative recent 2009 opinion that defines possession that way. Let me just read to the Court from the opinion. It says, contrary to DSC, the party's contention, to have possession of something, it is not italicized, necessary to have physical italicized, custody and control. It is sufficient to have actual custody and control with the intent of exercising such control. In my hypothetical, Smith Corporation has possession of my car because it has control over the person to whom they took it. In this situation, turning that hypothetical to this case, the property did not go to Christie's and from Christie's to HOV. Rather, it was a facilitation by Christie's to have an independent relationship with HOV. Is that the case? No, Your Honor. I don't think it is the case, because it really functionally is no different as if Christie's bought some property and said, ship it to location X. That's where I'm going to ship it. It doesn't go to Christie's, but Christie's has control of it. And I would like to point out to the Court that in the consignment agreement between Mr. Minor and HOV. But when they signed the security agreement, they didn't have possession even under that broad definition, right? They did have possession because all of his dealings were with Christie's. And in late May 2008, a critical time period, in the record, Mr. Minor, when he decides to keep it at HOV, says, let Laura keep them. Laura Paulson of Christie's, it's effectively saying, let Christie's keep them, or a jury easily could have so found. And again, the excerpts of record, page 352, the consignment agreement between Mr. Minor and HOV, right there in the agreement, the last line of it, says Haunch of Venice and Partners Limited is a member of the Christie's group and may use Christie's infrastructure and affiliated entities in the course of performing its responsibilities, which just indicates, again, what Mr. Minor's own consistent course of dealing and conduct was, was that he was dealing with Christie's about these paintings. And it would be a fundamental change in the law of secured creditors under the commercial code to hold that you have to have physical possession and that custody and control is not sufficient, as Christie's had here, as Mr. Minor repeatedly recognized, as witnesses from Christie's testified to, but as the jury was not allowed to consider because the district court did not instruct on an applicable provision of law. Let me change the emphasis just a little bit. You're challenging jury instructions here. As I understand it, harmless error would be an analysis that I could take on any one of these jury instructions. As I understand it, the jury found that Christie wrongfully retained the art. The jury found and, in fact, even scratched blocks showing that Christie's was liable for conversion, for breach of contract abatement, and for fraud based on a false premise. Given those were the jury's findings, why is this not harmless error, even if the jury instructions are bad? Two reasons, Your Honor. First of all, the burden is Mr. Minor's, and he hasn't even attempted to satisfy it. But secondly, he couldn't satisfy it, and the reason is because, just as an example, let's take the period September 2008 to November 2008. If the jury had been instructed on B3A, and if the jury could have determined that Christie's was a secured creditor, then that goes right to the heart of each of those three things, whether it wrongfully was converting the property during that period. That's the critical period, September to November 2008. Whether it was violating an implied contract of bailment, whether there was a breach there, and third, whether there was, for example, reasonable reliance on the asserted false promise, whether that asserted false promise was a substantial cause in the harm to Mr. Minor, because if Christie's was a secured creditor and had those rights, which the jury wasn't allowed to consider, then the asserted false promise would not have been the cause of it. So it goes right to the heart of all three of those. But most fundamentally, there's not a word in Mr. Minor's brief explaining why it would be harmless, and it's his burden. Thank you. All right. Your time has expired. Thank you, Your Honor. This matter stands submitted. Thank you both for your argument. Thank you, Your Honor. Wait a second. I've got a little noise going on. First off, are you asking to have something given to the panel? Yes, Your Honor. Do you want it to the other side? Well, that would have been nice if you would have done that before, because I don't we don't generally mark exhibits here. We're not a trial court. I can describe this briefly, Your Honor. This is a diagram that's similar. Well, let them look at it, because it might have stuff in it that they don't think is part of the case. Thank you, Your Honor. In the future, do that beforehand so that we don't have to waste our oral argument time. All right. Possibly, if I were to someone from the appellee's side, can I just have you come to the Hi, Your Honor. I'm Deanne Maynard. I'm going to speak today for the joint defendant's appellees. All right. You've had a chance to look at what he wants the court to look at? We don't object to it. All right. Well, I'm not going to mark it. It's not evidence. But now that everyone's reviewed it, I guess copies have been given to the clerk and we'll consider it. Thank you. Your Honor, Merrill Davidoff for the plaintiff's appellees. This diagram actually appeared in slightly different form in both our complaint and our brief, our opening brief on appeal. And I just thought I might have a need to refer to it. I'd like to try to reserve five minutes for rebuttal. I think if we figured out anything on this, we've actually figured this one out. But this is a complicated case. I will consider it.
judges: Lucero, Callahan, Smith